FILED

DEC 10 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MONTELONGO,<br><br>    Plaintiff,<br><br>v.<br><br>W.L. MONTGOMERY,<br><br>    Defendant. | Case No.: 15-cv-0448 AJB (KSC)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On February 18, 2015, Robert Montelongo ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. [Doc. No. 1.] The petitioner raises the following grounds for relief: (1) ineffective assistance of counsel ("IAC"); (2) a due process violation when the trial court denied his Motion to withdraw from the guilty plea; and, (3) a due process violation when the appellate court failed to hold evidentiary hearings on his claim. [Doc. No. 1-1, at pp. 4, 10, 11.]

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to Title 28 United States Code, Section 636(b), and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California. Based on the moving and opposing papers, and for the reasons outlined below, this Court **RECOMMENDS** that the Petition be **DENIED**.

## I. PROCEDURAL HISTORY

Petitioner Robert Montelongo is in the custody of respondent based upon a valid judgment in San Diego County, where he pleaded guilty to second degree murder (Cal. Pen. Code §187(a)) with an enhancement for the use of a gun in the commission of the offense (Cal. Pen. Code § 12022.53(b)). [Doc. No. 15-8, at pp. 1-2.] Petitioner was sentenced to an indeterminate term of 15 years to life for second degree murder, plus a determinate term of 10 years for the "gun use" enhancement. *Id.* at 2.

Petitioner was originally arrested and charged in connection with the January 12, 2012 death of Stephen Board in Oceanside, California. [Doc. No. 1-1, at p. 3.] Following arraignment, Ricardo D. Garcia was appointed to represent Petitioner as counsel. [Doc. No. 1-1, at p. 3.] A jury trial commenced on August 2, 2012 in the North County division of San Diego Superior Court. [Doc. No. 1-1, at p. 3.]

On August 15, 2012, two weeks into the trial, Mr. Garcia communicated a plea agreement offer from the district attorney to petitioner. [Doc. No. 1-1, at p. 3.] The offer was for a stipulated prison sentence of 15 years to life plus 10 additional years. [Doc. No. 15-8, at p. 4.] Petitioner accepted the plea agreement and underwent a guilty plea colloquy with the trial judge. [Doc. No. 15-5, at pp. 156-162.] The judge asked him several questions to confirm that he understood the implications of the plea agreement and that the decision was knowing, intelligent, and voluntary. *Id.* The trial judge ultimately accepted his change of plea and set dates for sentencing the petitioner. *Id* at 162.

Petitioner relieved Mr. Garcia as counsel and retained Sean F. Leslie prior to the sentencing hearing. [Doc. No. 16, at p. 10.] Petitioner, through Mr. Leslie, filed a Motion to Withdraw from the plea agreement asserting that his acceptance was involuntary and that Mr. Garcia incorrectly informed him of the consequences of the agreement. *Id.* On December 6, 2012, the trial court held an evidentiary hearing where petitioner and Mr. Garcia both testified regarding Mr. Garcia's plea agreement advice. [Doc. No. 15-5, at p. 170.] The trial Judge ultimately denied petitioner's Motion and sentenced him in accordance with the written plea agreement to a term of 15 years to life, plus 10 years in a

state correctional facility. [Doc. No. 15-5, at p. 227.]

## II. STATEMENT OF TRIAL FACTS

The California Court of Appeal's unpublished opinion sets forth a brief summary of the facts which gave rise to the initial criminal proceedings in this case. [Doc. No. 15-8, pp. 3-8.] Title 28 U.S.C. §2254(e)(1) creates a statutory presumption that the state court's findings of facts were correct, and the petitioner bears the burden of disproving these facts by clear and convincing evidence. *Tilcock v. Budge*, 538 F.3d 1138, 1141 (9th Cir. 2008). This Court has conducted an independent review of the trial record and confirmed that the Court of Appeal's factual findings comport with the record. The Court of Appeal found:

> On January 2, 2012, in the late afternoon, police were called to an Oceanside house where they found Stephen Board, a documented member of the Crook Mob Gangster Crips gang, dead from a single gunshot to the back of the head. The area where Board was killed was known to be claimed by Varrio Mesas Locos, a Hispanic gang who had a long-standing rivalry with black gang members.
>
> Witnesses reported observing "four Mexicans" walking towards Board and asking him, "What's up fool?" Board yelled, "Oh shit he got a pistol," and then ran in an attempt to escape. Board was then shot in the back of his head. A police investigation identified Montelongo, Solano, and Soria- all members of the Varrio Mesa Locos gang as suspects in the shooting. Following his arrest for a probation violation, Montelongo admitted he saw the shooting, but claimed he was not involved. During a police interview, Soria indicated Montelongo was the shooter. [¶...]
>
> 1. Montelongo's Guilty Plea
>
> On August 15, 2012, during trial, Montelongo withdrew his not guilty plea, pleaded guilty to one count of murder as charged in count 1, and admitted a gun use enhancement allegation (§ 12022.53, subd. (b)). With the assistance of his appointed counsel, Ricardo D. Garcia, Montelongo executed a guilty plea form, which indicated he had not been induced to enter the plea by any promise or representation, except: "Stip 15–life plus 10 years." With his initials, Montelongo acknowledged he understood the "maximum punishment" he could receive as result of his plea was "25 years imprisonment or imprisonment plus a term of mandatory supervision."

In court, Montelongo indicated he wished to plead guilty to count 1 and the gun use allegation. He admitted he signed and initialed the plea form after discussing the form with his attorney. He also indicated he had no questions about the contents of the form, and Garcia had answered any questions he had in going over the form. The following exchange occurred among the court, Montelongo, and Montelongo's counsel, Garcia:

"The Court: Paragraphs one and two comprise the plea agreement, which indicates you're going to enter a plea to count 1, a violation of Penal Code section 187. You're going to admit an allegation of section 12022.53, subdivision (b) and *the stipulated sentence is 15 years to life plus ten years*; is that your full understanding of the plea agreement?

"Montelongo: Yes.

"The Court: Has anyone made any other promise or agreement with you other than what I just read to you?

"Montelongo: No, sir. ¶ ...

"The Court: I'm obligated by law to tell you the maximum possible consequences. The plea agreement we know is *15 plus ten*. The maximum, technically under the law, can be higher.... ¶ ... ¶ ... Do you understand all of that?

"Montelongo: Yes.

"The Court: Have you had sufficient time to discuss this case with your attorney and make him aware of everything you know about the case?

"Montelongo: Yes.

"The Court: Mr. Garcia, did you advise your client of all his rights, possible defenses to the charges, the consequences of his plea and the admission?

"Garcia: I have.

"The Court: Do you join in the waiver of the rights and the entry of the plea?

"Garcia: One moment, Your Honor.

"The Court: Okay.

"Garcia: Yes, Your Honor, I do."

Montelongo indicated he had not been not threatened or coerced into pleading guilty and he was pleading guilty freely and voluntarily because he was guilty. He also indicated he had no questions about the form or anything discussed in court.

Montelongo then pleaded guilty to count 1 and admitted the firearm allegation. The court accepted the plea and admission, finding Montelongo understood the nature of the proceedings and the consequences of his plea.

The following month, Garcia was relieved as Montelongo's counsel and Sean Leslie was substituted as his new counsel of record. [¶…]

2. Montelongo's motion to withdraw

[¶…]
At the hearing on his motion during the sentencing proceeding, Montelongo testified that from the time of his arraignment until his trial, he only saw his attorney, Garcia, three times. Montelongo stated that Garcia told him during trial that he only had "a matter of minutes" to accept a plea deal and he should take the deal because he would be "out" when he was 35 years old. Prior to that day, the prosecutor's offer was 25 years to life. According to Montelongo, when Garcia spoke to him about the change of plea, he said he requested some time to think about it and discuss the offer with his family. Garcia told him he had to hurry up, and he was not allowed to speak to his parents before pleading guilty. Montelongo testified he "felt overwhelmed and didn't know what to do." He stated that Garcia only spent "a minute or two" discussing the plea form with him and indicated he did not know what the word "Stip" referred to.

Montelongo also stated that while the judge was going through the plea form with him, he was relying on his lawyer, who would nod and say, "Yes." He indicated that he did not understand what the judge meant when he said "Stip to 15 years to life." Montelongo claimed his lawyer said he would be out of prison in 15 years, and this was the only reason he pleaded guilty. He indicated he would not have pleaded guilty to the murder count had he known there was a "life charge or a life consequence."

5

During cross-examination, Montelongo indicated he had never heard anyone use the term "stip" during the eight months he was in jail. He acknowledged that he initialed the plea form; that the form stated 15 years to life, plus 10 years; that the form stated he understood the maximum punishment was 25 years imprisonment plus a term of mandatory supervision; and that he could get lifetime parole. Montelongo further acknowledged he said "yes" when the judge asked him whether he understood that the stipulated sentence was 15 years to life, plus 10 years.

The prosecution called Montelongo's former counsel, Garcia, to testify. Garcia testified that he spent about 20 hours discussing the case with Montelongo before trial. He indicated that he explained the settlement offers to Montelongo and that he also explained in plain English the difference between an indeterminate life term and a determinate term that is "a straight number of years." Garcia stated he discussed with Montelongo what a "life" term meant on three or four occasions. Montelongo never communicated any difficulty or confusion understanding this distinction.

Garcia also testified that prior to trial, the prosecutor had offered to settle the matter for a sentence of 15 years to life, plus 10 years, which he had explained to Montelongo, who rejected the offer. Garcia indicated that matters arose during trial which he believed negatively impacted his case, so he discussed resolving the matter with the district attorney's office. He conveyed the offer to Montelongo, who never communicated any difficulty in understanding the possible sentence. He explained the concept of a stipulated sentence and a "stip" to Montelongo, who appeared to understand.

Garcia further testified he never told Montelongo he would be out of prison after 15 years when he was 35 years old. He did tell Montelongo the deal needed to be done immediately. They went over the change of plea form together and he reviewed the entire form with Montelongo "in detail." Montelongo did not communicate any failure to understand nor did he indicate anything that would have led Garcia to believe that Montelongo thought he would be getting out of prison in 15 years. [Doc. No. 15-8, at pp. 3-8.]

### III. STANDARD OF REVIEW:

Federal habeas corpus relief is available only to those who are in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). "A federal court may

6

1 | not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S.
2 | 37, 41 (1984). "[A] mere error of state law is not a denial of due process." *Engle v. Isaac*,
3 | 456 U.S. 107, 121 n.21 (1982) (internal quotations omitted).

4 |      This Petition is governed by the provisions of the Antiterrorism and Effective Death
5 | Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA
6 | imposes a "highly deferential standard for evaluating state-court rulings, which demands
7 | that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S.
8 | 19, 24 (2002) (internal citations and quotations omitted). Under AEDPA, a habeas petition
9 | "on behalf of a person in custody pursuant to the judgment of a State court shall not be
10 | granted with respect to any claim that was adjudicated on the merits in State court
11 | proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary
12 | to, or involved an unreasonable application of, clearly established Federal law, as
13 | determined by the Supreme Court of the United States; or (2) resulted in a decision that
14 | was based on an unreasonable determination of the facts in light of the evidence presented
15 | in the State court proceeding." 28 U.S.C. § 2254(d)(1)&(2). For purposes of § 2254(d)(1),
16 | "clearly established Federal law" means "the governing legal principle or principles set
17 | forth by the Supreme Court at the time the state court renders its decision." *Lockyer v.*
18 | *Andrade*, 538 U.S. 63, 71-72 (2003). Therefore, a lack of controlling Supreme Court
19 | precedent can preclude habeas corpus relief. *Wright v. Van Patten*, 552 U.S. 120, 126
20 | (2008).

21 |      The AEDPA standard is highly deferential and "difficult to meet." *Harrington v.*
22 | *Richter*, 562 U.S. 86, 100 (2011). For mixed questions of fact and law, federal habeas relief
23 | may be granted under the "contrary to" clause of section 2254 if the state court applied a
24 | rule different from the governing law set forth in Supreme Court cases, or if it decided a
25 | case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell*
26 | *v. Cone*, 535 U.S. 685, 694 (2002). The focus of inquiry under the "contrary to" clause is
27 | "whether the state court's application of clearly established federal law is objectively
28 | unreasonable." *Id.* "[A]n unreasonable application is different from an incorrect one." *Id.*

1  In other words, federal habeas relief cannot be granted simply because a reviewing court
2  concludes based on its own independent judgment that the state court decision is erroneous
3  or incorrect. *Id.* Habeas relief is only available under § 2254(d)(1) "where there is no
4  possibility fairminded jurists could disagree that the state court's decision conflicts" with
5  Supreme Court precedents. *Harrington*, 562 U.S. at 101.

6  Where there is no reasoned decision from the state's highest court, a federal court
7  "looks through" to the "last reasoned state-court opinion" and presumes it provides the
8  basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797,
9  805-806 (1991). If the state court does not provide a reason for its decision, the federal
10 court must conduct an independent review of the record to determine whether the state
11 court's decision is objectively unreasonable. *Crittenden v. Ayers*, 624 F.3d 943, 947 (9th
12 Cir. 2010). To be objectively reasonable, a state court's decision need not specifically cite
13 Supreme Court precedent. "[S]o long as neither the reasoning nor the result of the state-
14 court decision contradicts [Supreme Court precedent]," the state court's decision will not
15 be "contrary to clearly established Federal law." *Early v. Packer*, 537 U.S. 3, 8 (2002).

16 Here, the California Supreme Court denied the petition without comment and
17 therefore the California Court of Appeal's written opinion constitutes the "last reasoned
18 state-court opinion" in the record. This Court will look to the Court of Appeal's decision
19 when evaluating each of the petitioner's claims under AEDPA's standards.

### IV. PETITIONER'S CLAIMS ARE EXHAUSTED OR ARE OTHERWISE PLAINLY MERITLESS

22 As an initial matter, this Court must determine whether the petitioner's constitutional
23 claims have been exhausted in the state court. Prisoners in state custody who seek collateral
24 relief in federal habeas proceedings are required to exhaust state judicial remedies, either
25 on direct appeal or through state collateral proceedings, by presenting the highest state
26 court with a fair opportunity to rule on the merits of each and every claim they seek to raise
27 in federal court. *See* 28 U.S.C. § 2254(b),(c); *Granberry v. Greer*, 481 U.S. 129, 133–34
28 (1987). It is undisputed that the petitioner exhausted his state court remedies as to the first

and second claims raised in his instant federal petition. Neither petitioner nor respondent address exhaustion of Ground Three for relief. The issue of exhaustion, however, need not be reached because the claim can be denied on the merits for the reasons discussed below. *See* U.S.C. § 2254(b)(2) (allowing district court to deny unexhausted claim on its merits); *see also Rhines v. Weber*, 544 U.S. 269, 270 (2005) (a district court would abuse its discretion if it granted a stay when the unexhausted claim is plainly meritless).

## V. GROUND ONE: INEFFECTIVE ASSISTANCE OF COUNSEL

In Ground One, petitioner raises IAC associated with Mr. Garcia's advice to plead guilty during petitioner's jury trial. First, petitioner asserts that his trial counsel incorrectly advised him of the effect and consequences of his plea agreement. [Doc. No. 1-1, at pp. 6-7.] Second, petitioner asserts a general claim of IAC related to Mr. Garcia's overall actions in advising him to accept the agreement. *Id.* at 7-9.

The standard of review for a claim of ineffective assistance of counsel is well established under *Strickland v. Washington*, 466 U.S. 668 (1984), and "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). To prevail, a defendant must show two things: first, that counsel's performance was so deficient as to fall short of the guarantee of "counsel" under the Sixth Amendment; and second, that counsel's errors were so prejudicial as to deprive the defendant of a fair trial. *Strickland*, 446 U.S. at 687. The *Strickland* standard is "highly deferential" to trial counsel; the Supreme Court recognized that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The Court further held that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The standard of review for a claim of ineffective assistance raised in a federal habeas petition is even more deferential. Here, the petitioner's claim has already been evaluated and rejected once by the state court. This Court, therefore, is not called upon to determine anew whether trial counsel was ineffective. Rather, the only question before this Court is whether the state court's denial of the petitioner's claim was "unreasonable." *Harrington*

*v. Richter*, 562 U.S. 86, 100 (2011). A state court's decision is reasonable as long as "fairminded jurists could disagree" on the correctness of the decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

As the Supreme Court explained in *Harrington*, a federal court's review of a state court's denial of an ineffective assistance claim receives double deference: "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105, *citing Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under §2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 1. Counsel's Alleged Failure to Correctly Advise Petitioner

The petitioner asserts that his trial counsel was ineffective because he incorrectly counseled petitioner that the plea agreement was for a fixed term of 15 years and that he would be out of prison by the time he was 35 years old.[1] [Doc. No. 1-1, at pp. 5-6.] In support of his position, petitioner cites his testimony adduced at the evidentiary hearing held by the trial court and to his educational inexperience. *Id.* at 7. He concludes by asserting that the court's decision was contrary to clearly established federal law. *Id.* Petitioner's interpretation of the court's decision does not properly articulate the basis on which the case was decided. Contrary to his assertion, the California Court of Appeal did not accept petitioner's version of events and then incorrectly apply the *Strickland* standard in light of those facts. Rather, the court rejected petitioner's facts as unsubstantiated by the evidence, finding that Mr. Garcia accurately advised the petitioner of all of the terms and effects of his plea agreement. [Doc. No. 15-8, at pp. 12-13.] Because petitioner's claim rests on a competing divergent factual narrative, this Court must determine whether the

---

[1] Petitioner was twenty years old at the time of his guilty plea. [Doc. No. 15-5, at p. 174.]

California Court of Appeal made a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

To violate the standard of 28 U.S.C. § 2254(d)(2), a state court's review of the record must be objectively unreasonable. *Id.* A decision by the state court will be based on an objective unreasonable determination of the facts, for example, when it fails to make a factual finding, makes a factual finding utilizing the wrong legal standard, or ignores evidence that supports petitioner's claim. *Taylor v. Maddox*, 366 F.3d 992, 1000-1001 (9th Cir. 2004).

Here, the Court of Appeals concluded that the record contained substantial evidence that Mr. Garcia fully explained the meaning and effect of the plea agreement to petitioner prior to signing the deal. [Doc. No. 15-8, at pp. 12-13.] The court found:

> Substantial evidence establishes that Garcia spent about 20 hours discussing the case with Montelongo prior to trial. Garcia indicated in his testimony that he conveyed all settlement offers to Montelongo, and explained to him the difference between indeterminate and determinate terms. Garcia testified that prior to trial, the prosecutor had offered to settle the matter for a sentence of 15 years to life, plus 10 years, and that he had explained this offer to Montelongo, who rejected it. Garcia also stated that on three or four occasions he discussed with Montelongo what a "life" term meant; and he also explained the concept of a stipulated sentence and a "stip" to Montelongo, who appeared to understand. As already discussed, Garcia testified he never told Montelongo he would be out of prison after 15 years when he was 35 years old. [Doc. No. 1-1, p. 12.]

In reaching their decision, the Court of Appeal acknowledged the testimony of the petitioner but found sufficient corroborative evidence to support the testimony of Mr. Garcia. [Doc. No. 15-8, at p. 12.] An independent review of the record reveals ample evidence supporting the Court of Appeal's decision.

First, it is uncontested that an identical plea offer was made to petitioner several months prior to trial and that Mr. Garcia fully explained, at that time, the ramifications of a stipulated sentence of "fifteen to life plus ten years." *Id.* at 186, 205. The instant offer

was expressly written on the change of plea form with petitioner's initials next to the agreed sentence. *Id.* at 188. Additionally, the trial judge independently confirmed with petitioner that he understood the "stipulated sentence [was] 15 years to life plus ten years." *Id.* at 157.

Second, during petitioner testimony at the evidentiary hearing he stated that as of the evidentiary hearing, he did not know the meaning and effect of the word "stip" contained in his plea agreement. *Id.* at 179-180. To find petitioner's assertion credible requires a conclusion that not only did Mr. Garcia fail on two separate dates to explain the terms contained in the agreement but that his replacement lawyer, hired for the very purpose of asserting an IAC claim, also independently failed to explain the material terms in his agreement. This juxtaposition calls into question the accuracy of petitioner's recitation of the facts.

Finally, Mr. Garcia testified that he explained the full meaning and effect of the fifteen to life, plus 10 year sentencing agreement at least twice on the day he accepted the offer. *Id.* at 215-217. He stated that he explained to petitioner the distinction between the determinate sentence and an indeterminate sentence on at least three prior occasions. *Id.* at 201. Mr. Garcia recounted the detailed conversation and debate he had with petitioner regarding whether he wished to accept the deal stating, *inter alia,* as follows:

> When I came back, Mr. Montelongo indicated that he was not interested in entering the plea. He wanted to go forward with trial. I agreed with that and told him I supported his position completely and went over what the possible consequences of the trial were and what I felt how [sic] we could approach a defense and what defense I think we could still develop if we continued with trial, even with the information that came out through Mr. Allard. Mr. Montelongo then went back and said, maybe I should take the deal. And he indicated to me, based on my communications, that he didn't want to do certain things that were probably necessary to move forward at trial, and based on that he wanted to take the deal. We went back and forth with that for a while, and I told him that it was up to him. Whatever he wanted to do, I would do it, and gave him the consequences. I can't tell you how long that discussion took place. But finally, at some point in time, his indication was that he wanted to take the deal. [Doc. No. 15-5, at pp. 216-217.]

The standard for federal habeas relief is not whether the appellate court made the correct decision, but rather whether the determination was objectively reasonable. Based on an independent review of the record, the California Court of Appeal's determination that Mr. Garcia accurately and fully explained to petitioner all material terms of the plea agreement is objectively reasonable.

### 2. Petitioner's General IAC Claim

Under Ground One for relief, petitioner asserts a general claim of IAC related to Mr. Garcia's overall actions in advising him to accept the agreement. *See e.g.* [Doc. No. 16, at p. 14] ("Trail counsel fell below professional norms in advicing [sic] him to plea [sic] guilty to second degree murder while his trial was in full course....Trial counsel did not ever employ much of his time to a first degree murder case....Trial counsel Mr. Garcia...only gave petitioner a matter of minute to decided [sic] the plea bargain.")

After reviewing the complete trial record, this Court finds no grounds for federal habeas relief under a claim of ineffective assistance of counsel because petitioner failed to demonstrate that his trial counsel's advice fell below an objective standard of reasonableness. The petitioner's chief complaints appear to be (a) his counsel failed to provide sufficient time to make an informed decision; and, (b) that his attorney advised him to plead guilty during the middle of his jury trial. [Doc. No. 16, at pp. 15-16.]

With regard to petitioner's first complaint, petitioner asserts that Mr. Garcia "only gave [me] a matter of minutes to decided [sic] the plea bargain." [Doc. No. 1-1, at pp. 7-8.] The Court of Appeals found that the petitioner was "not operating under mistake, ignorance, duress, or any other factor overcoming the free exercise of his free judgment" *Id.* at 12 (internal citation omitted). The amount of time a petitioner had to consider the plea is "only relevant if it somehow rendered his plea coerced, and therefore involuntary." *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007). In *Doe*, the court found the defendant's plea voluntary when the defendant had only had two hours to consider the offer. *Id.*

///

The record in this case indicates that Mr. Garcia informed petitioner of the potential deal when the court broke for the lunch break at 11:47 A.M.[2] [Doc. No. 15-5, at pp. 212-213.] Petitioner and his counsel again discussed the deal after the petitioner had lunch. *Id.* at 215-216. The Court reconvened at 1:33 P.M. on that same day, at which time the guilty plea was entered. [Doc. No. 15-2, at p. 87.] Unlike the defendant in *Doe*, here, the petitioner was offered and rejected the same deal months earlier. [Doc. No. 15-5, at pp. 200-202.] Petitioner had the added benefit of contemplating over a period of several months the meaning of fifteen to life plus ten years as a potential sentence for his offense. Finally, the trial court asked petitioner during the plea colloquy whether he had sufficient time to discuss the case with his attorney, to which he replied "yes." *Id.* at p. 190. The acceptance of a plea agreement is entirely within the control of the defendant. Both the trial judge and his counsel inquired to ensure he fully understood the meaning and effect of his agreement and that he had sufficient time to contemplate the case. *Id.* at 190; 216-217. Petitioner's assertion that his counsel's performance fell below an objective standard of reasonableness regarding the time is without merit.

With regard to petitioner's second complaint, "there are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 688. For example, if Mr. Garcia believed that trial was going poorly and that his client was likely to be found guilty of first degree murder, as a competent attorney, he may have believed it prudent for petitioner to plead guilty to second degree murder instead. In fact, the record indicates that immediately before the plea agreement was executed, a key witness came forward for the first time and identified the petitioner as the shooter. [Doc. No. 14-1, p. 18.] The trial judge ruled that the evidence was admissible at trial. [Doc. No. 15-5, at p. 150-154.] Additionally, the government had recently discovered a jailhouse note, ostensibly written by petitioner, attempting to influence a second participant into blaming a third party for the murder. *Id.*

---

[2] The Minute entry of the court indicates that the parties broke for lunch at 12:09 P.M. however, the trial judge noted that the court recessed early at 11:47 A.M. *Compare* [Doc. No. 15-2, at p. 87] *with* [Doc. No. 15-5, at p. 225.]

at 202-203. Both facts were communicated by Mr. Garcia to the petitioner and likely served as incentives for petitioner to accept a plea agreement. [Doc. No. 15-5, pp. 202-205.]

Petitioner also generally asserts that Mr. Garcia did not spend sufficient time preparing for his case and this resulted in a coerced plea agreement. [Doc. No. 16, at p. 14-15.] The Court of Appeals found that Mr. Garcia spent 20 hours working directly with petitioner and the record indicates that Mr. Garcia spent approximately 500 hours working on petitioner's case prior to trial. [Doc. No. 15-5 at pp.199, 200.] Indeed, petitioner conceded during his testimony that the trial was going well for him until the eye witness came forward identifying him as the shooter and the government intercepted the jailhouse note. [Doc. No. 15-5, at pp. 182-185; 220-221.] These facts support the Court of Appeal's conclusion that Mr. Garcia acted within the objective standard of reasonableness required of a competent defense attorney. Accordingly, the petitioner has failed to demonstrate that his counsel's representation was ineffective.

Mindful of AEDPA's doubly deferential standard of review of a state court's denial of IAC claims, this Court finds that the California Court of Appeal acted reasonably when it denied the petitioner's claim of ineffective assistance of trial counsel. The Court **RECOMMENDS** that the District Court **DENY** the petitioner's Ground One for relief.

## VI. GROUND TWO: DENIAL OF DUE PROCESS RIGHTS

Petitioner argues that the trial court erred by refusing to allow him to withdraw his guilty plea. [Doc. No. 1-1, at p. 10.] Specifically, the petitioner claims that the state court should have allowed him to withdraw his plea under California Penal Code § 1018 because he did not have sufficient time to consider the plea agreement and was not sufficiently informed regarding its terms. [Doc. No. 14-1, p. 21.]

Federal habeas corpus is only available on behalf of an inmate held in violation of the United States Constitution or law or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McQuire*, 502 U.S. 62, 67-68, (1991); *Engle v. Isaac*, 456 U.S. 107, 119, (1982). To the extent that petitioner's argument relies on violations of state law, federal habeas relief is not available. However, federal courts are instructed to construe the pleadings of

*pro se* litigants liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Under this less stringent pleading standard, petitioner's reference to federal constitutional amendments creates a federal issue for this Court to decide. [Doc. No. 1-1, p. 10.]

Petitioner's request to withdraw his guilty plea was heard by the California Court of Appeal and subsequently denied in their November 27, 2013 unpublished opinion. [Doc. No. 15-8.] The Court of Appeal reviewed the trial court's decision for an abuse of discretion. They stated:

> We conclude substantial evidence supports the court's implied factual determination that when Montelongo entered his plea, he was not operating under mistake, ignorance, duress, or "any other factor overcoming the free exercise of his free judgment" (*People v. Weaver*, 118 Cal. App. 4th 131, 145-46 (2004)); and thus, Montelongo has failed to meet his burden of making a clear showing of abuse of discretion. Both in the change of plea form and orally at the hearing on his motion in response to the court's questions, Montelongo indicated he understood that, in exchange for his plea, he would be sentenced to a prison term of 15 years to life plus 10 years. [Doc. No. 15-8, p. 12.]

Based on their reasoned decision, the AEDPA imposes two levels of deference upon this Court. A state court's application of United States Supreme Court precedent is to be given deference unless it is objectively unreasonable. *Lockyer*, 538 U.S. at 71-72 Thus, to grant habeas relief this Court must find that the California Court of Appeals conclusion that the state trial court did not abuse its discretion in rejecting petitioner's request was not objectively reasonable. *See* Section III, *supra*.

To protect the due process rights of the defendant, a guilty plea must be "voluntary" and "intelligent." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). These terms have been interpreted narrowly. An individual's "strategic miscalculations... do not justify setting aside an otherwise valid guilty plea." *United States v. Broce*, 488 U.S. 563, 571 (1989). A defendant who pleads guilty because he is advised to do so by counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel

1  was not within the [range of competence demanded by attorneys in criminal cases]." *Tollet*
2  *v. Henderson*, 411 U.S. 258, 267 (1973).

3        The state court's findings indicate that the petitioner was afforded due process
4  protections by the trial court which accepted his plea. The court found that Mr. Garcia
5  reviewed the change of plea form with petitioner in detail and spent approximately 20 hours
6  discussing the case with him prior to trial. [Doc. No. 1-1, p. 26.] Moreover, when asked by
7  the trial judge, petitioner did not claim any difficulty understanding the agreement or its
8  consequences. *Id.* He specifically answered "Yes" to all of the following questions: "the
9  stipulated sentence is 15 years to life plus ten years; is that your full understanding of the
10 plea agreement" and "have you had sufficient time to discuss this case with your attorney
11 and make him aware of everything you know about the case?" *Id.* at p. 18. He then indicated
12 on the record that he was pleading guilty freely and voluntarily because he was guilty. *Id.*
13 Finally, when the judge asked him if he had any questions whatsoever about the plea
14 agreement, he answered "no." *Id.*

15       Additionally, the undisputed testimony of Mr. Garica demonstrates that he discussed
16 the offer with the petitioner when the court first broke for lunch. [Doc. No. 15-5, at pp.
17 215-217.] Petitioner had the added benefit of already contemplating the meaning and effect
18 of the particular sentence as it was offered to him months earlier. *Id.* at 200-202. Mr. Garcia
19 then reengaged the petitioner regarding his decision on the plea offer after he had time to
20 contemplate his decision over the lunch recess. *Id.* at 215-217. A back and forth discussion
21 occurred where Mr. Garcia discussed the current state of the case, the newly discovered
22 evidence that undermined their original strategies, and what they needed to do in order to
23 proceed. *Id.* Only after discussing all of these options and the resulting consequences did
24 petitioner make a final decision. *Id.*

25       This Court finds that the claim adjudicated on the merits in the state court
26 proceedings was not the result of a decision contrary to, or involving an unreasonable
27 application of, clearly established Federal law, as determined by the Supreme Court of the
28 United States. Nor was the decision the result of an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding. It is therefore **RECOMMENDED** that the District Court **DENY** the petitioner's Ground Two for relief.

## VII. GROUND THREE: DENIAL OF AN EVIDENTIARY HEARING

Under Ground Three, petitioner argues that the appellate court erred by denying his request for an evidentiary hearing. [Doc. No. 1-1, at pp. 10-12.] Respondents contend that the trial court held an evidentiary hearing and that the petitioner did not present any evidence to dispute the facts adduced by the trial court. [Doc. No. 14-1, at pp. 25-26.] Self-serving assertions by the petitioner will not suffice to establish error. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (observing that conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief); *Blackledge v. Allison*, 431 U.S. 63, 75 n. 7 (1977) (noting that a petitioner must state facts that point to a real possibility of constitutional error to be entitled to habeas corpus relief); *see also, Jones v. Gomez*, 66 F.3d 199, 204-05 & n. 1 (9th Cir. 1995). Petitioner has asserted a violation of his constitutional rights without referencing an actual request for an evidentiary hearing to any appellate court. [Doc. No. 1-1, at pp. 10-12.] The petitioner does not provide any further clarification as to the source of his grievance in his Traverse. [Doc. No. 16.]

This Court's independent review of the record reveals only one mention of a request for an evidentiary hearing to an appellate court. In petitioner's writ of habeas corpus to the California Supreme Court, in the caption of the case he indicated: "evidentiary hearing requested." [Doc. No. 15-9, at p. 1.] This singular mention, without any further reference or explanation, is insufficient to raise a constitutional violation under the AEDPA. Indeed, the structure and language of petitioner's Traverse appears to concede that Ground Three for relief in his original petition is plainly meritless. [Doc. No. 16.]

Consequently, the Court **RECOMMENDS** that Ground Three for relief be **DENIED** as plainly meritless.

///
///
///

## VIII. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. §636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: 1) approving and adopting this Report and Recommendation; and 2) directing that Judgment be entered denying the Petition for Writ of Habeas Corpus.

**IT IS HEREBY ORDERED THAT** any party may file written objections with the District court and serve a copy on all parties ***no later than January 29, 2015***. The document should be entitled "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than two weeks after receipt of the objections or **February 12, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**
Date: *Dec. 10*, 2015

KAREN S. CRAWFORD
United States Magistrate Judge