UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MONTELONGO,<br><br>                              Petitioner,<br>v.<br>W.L. MONTGOMERY,<br><br>                             Respondent. | Case No.: 15-CV-0448-AJB-KSC<br><br>**ORDER:**<br><br>**(1) ADOPTING THE REPORT AND RECOMMENDATION, (Doc. No. 18);**<br><br>**(2) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (Doc. No. 1); AND**<br><br>**(3) DENYING CERTIFICATE OF APPEALABILITY** |

      On February 18, 2015, Robert Montelongo ("Petitioner") filed a petition for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner raised the following grounds for relief: (1) ineffective assistance of counsel; (2) a due process violation for the denial of his motion to withdraw from a guilty plea; and (3) a due process violation for the state appellate court's failure to hold an evidentiary hearing. (Doc. No. 1-1 at 4, 9–11.) On March 17, 2015, the Court denied Petitioner's request to appoint counsel.

1

1  (Doc. No. 12.) On May 6, 2015, Respondent filed a response to the Petition. (Doc. No. 14.)
2  Petitioner filed a traverse on June 8, 2015. (Doc. No. 16.)
3       Magistrate Judge Karen S. Crawford issued a report and recommendation ("R&R")
4  recommending the Petition be denied, finding the three claims to be without merit. (Doc.
5  No 18.) On February 5, 2016, Petitioner filed objections to the R&R. (Doc. No. 22.)
6  Respondent replied to the objections on February 18, 2016, (Doc. No. 24), and Petitioner
7  sur-replied on March 10, 2016, (Doc. No. 26). For the reasons outlined below, the Court
8  **ADOPTS** the R&R and **DENIES** the Petition.

### FACTUAL BACKGROUND

The Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut this presumption, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding that findings of historical fact, including inferences properly drawn therefrom, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> On January 2, 2012, in the late afternoon, police were called to an Oceanside house where they found Stephen Board, a documented member of the Crook Mob Gangster Crips gang, dead from a single gunshot to the back of his head. The area where Board was killed was known to be claimed by Varrio Mesas Locos, a Hispanic gang who had a long-standing rivalry with Black gang members.
>
> Witnesses reported observing four "Mexicans" walking towards Board and asking him, "What's up fool?" Board yelled, "Oh shit he got a pistol," and then ran in an attempt to escape. Board was then shot in the back of his head.
>
> A police investigation identified Montelongo, Solano, and Soria—all members of the Varrio Mesa Locos gang as suspects in the shooting. Following his arrest for a probation violation, Montelongo admitted he saw the shooting, but claimed he was not involved. During a police interview, Soria indicated Montelongo was the shooter. . . .
>
> *1. Montelongo's guilty plea*
> On August 15, 2012, during trial, Montelongo withdrew his not guilty plea,

pleaded guilty to one count of murder as charged in count 1, and admitted a gun use enhancement allegation (§ 12022.53, subd. (b)). With the assistance of his appointed counsel, Ricardo D. Garcia, Montelongo executed a guilty plea form, which indicated he had not been induced to enter the plea by any promise or representation, except: "Stip 15–life plus 10 years." With his initials, Montelongo acknowledged he understood the "maximum punishment" he could receive as [a] result of his plea was "25 years imprisonment or imprisonment plus a term of mandatory supervision."

In court, Montelongo indicated he wished to plead guilty to count 1 and the gun use allegation. He admitted he signed and initialed the plea form after discussing the form with his attorney. He also indicated he had no questions about the contents of the form, and Garcia had answered any questions he had in going over the form. The following exchange occurred among the court, Montelongo, and Montelongo's counsel, Garcia:

"[The Court:] Paragraphs one and two comprise the plea agreement, which indicates you're going to enter a plea to count [1,] a violation of Penal Code section 187. You're going to admit an allegation of [section] 12022.53[, subdivision] (b) and *the stipulated sentence is 15 years to life plus ten years*; is that your full understanding of the plea agreement?

"[Montelongo:] Yes.

"[The Court:] Has anyone made any other promise or agreement with you other than what I just read to you?

"[Montelongo:] No, sir. [¶] . . .

"[The Court:] I'm obligated by law to tell you the maximum possible consequences. The plea agreement we know is *15 plus ten*. The maximum, technically under the law, can be higher. . . . [¶] . . . [¶] . . . Do you understand all of that?

"[Montelongo:] Yes.

"[The Court:] Have you had sufficient time to discuss this case with your attorney and make him aware of everything you know about the case?

"[Montelongo:] Yes.

3

"[The Court:] Mr. Garcia, did you advise your client of all his rights, possible defenses to the charges, the consequences of his plea and the admission?

"[Garcia:] I have.

"[The Court:] Do you join in the waiver of the rights and the entry of plea?

"[Garcia:] One moment, Your Honor.

"[The Court:] Okay.

"[Garcia:] Yes, Your Honor, I do." . . . (Italics added.)

Montelongo indicated he had not been threatened or coerced into pleading guilty and he was pleading guilty freely and voluntarily because he was guilty. He also indicated he had no questions about the form or anything discussed in court.

Montelongo then pleaded guilty to count 1 and admitted the firearm allegation. The court accepted the plea and admission, finding Montelongo understood the nature of the proceedings and the consequences of his plea.

The following month, Garcia was relieved as Montelongo's counsel and Sean Leslie was submitted as his new counsel of record.

*2. Montelongo's motion to withdraw his plea . . .*
At the hearing on his motion during the sentencing proceeding, Montelongo testified that from the time of his arraignment until his trial, he only saw his attorney, Garcia, three times. Montelongo stated that Garcia told him during trial that he only had "a matter of minutes" to accept a plea deal and he should take the deal because he would be "out" when he was 35 years old. Prior to that day, the prosecutor's offer was 25 years to life. According to Montelongo, when Garcia spoke to him about the change of plea, he said he requested some time to think about it and discuss the offer with his family. Garcia told him he had to hurry up, and he was not allowed to speak to his parents before pleading guilty. Montelongo testified he "felt overwhelmed and didn't know what to do." He stated that Garcia only spent "a minute or two" discussing the plea form with him and indicated he did not know what the word "Stip" referred to.

Montelongo also stated that while the judge was going through the plea form

4

with him, he was relying on his lawyer, who would nod and say, "Yes." He indicated that he did not understand what the judge meant when he said "Stip to 15 years to life." Montelongo claimed his lawyer said he would be out of prison in 15 years, and this was the only reason he pleaded guilty. He indicated he would not have pleaded guilty to the murder count had he known there was a "life charge or a life consequence."

During cross-examination, Montelongo indicated he had never heard anyone use the term "stip" during the eight months he was in jail. He acknowledged that he initialed the plea form; that the form stated 15 years to life, plus 10 years; that the form stated he understood the maximum punishment was 25 years imprisonment plus a term of mandatory supervision; and that he could get lifetime parole. Montelongo further acknowledged he said "[y]es" when the judge asked him whether he understood that the stipulated sentence was 15 years to life, plus 10 years.

The prosecution called Montelongo's former counsel, Garcia, to testify. Garcia testified that he spent about 20 hours discussing the case with Montelongo before trial. He indicated that he explained the settlement offers to Montelongo and that he also explained in plain English the difference between an indeterminate life term and a determinate term that is "a straight number of years." Garcia stated he discussed with Montelongo what a "life" term meant on three or four occasions. Montelongo never communicated any difficulty or confusion understanding this distinction.

Garcia also testified that prior to trial, the prosecutor had offered to settle the matter for a sentence of 15 years to life, plus 10 years, which he had explained to Montelongo, who rejected the offer. Garcia indicated that matters arose during trial which he believed negatively impacted his case, so he discussed resolving the matter with the district attorney's office. He conveyed the offer to Montelongo, who never communicated any difficulty in understanding the possible sentence. He explained the concept of a stipulated sentence and a "stip" to Montelongo, who appeared to understand.

Garcia further testified he never told Montelongo he would be out of prison after 15 years when he was 35 years old. He did tell Montelongo the deal needed to be done immediately. They went over the change of plea form together and he reviewed the entire form with Montelongo "in detail." Montelongo did not communicate any failure to understand nor did he indicate anything that would have led Garcia to believe that Montelongo thought he would be getting out of prison in 15 years.

5

(Doc. No. 15-8 at 3–8.)

## PROCEDURAL BACKGROUND

On August 2, 2012, a jury trial was commenced against Petitioner. (*See* Doc. No. 1-1 at 3.) On August 15, 2012, two weeks into the trial, the district attorney communicated a plea agreement offer to Petitioner: a stipulated prison sentence of 15 years to life plus an additional 10 years in exchange for a plea to second-degree murder. (Doc. No. 15-8 at 4.) Petitioner pleaded guilty to second degree murder (Cal. Pen Code § 187(a)) with an enhancement for the use of a gun in commission of the offense (Cal. Pen Code § 12022.53(b)). (*Id.* at 1–2.) The judge accepted the change of plea and set dates for sentencing. (Doc. No. 15-5 at 162–64.) Before the sentencing hearing, Petitioner relieved his attorney, Ricardo Garcia, as counsel and retained Sean Leslie. (*Id.* at 166; Doc. No. 15-8 at 6.) Leslie filed a motion to withdraw the plea agreement, stating that the initial guilty plea was involuntary. (Doc. No. 15-8 at 2.) On December 6, 2012, the trial court held an evidentiary hearing regarding the plea agreement and the advice Garcia provided Petitioner. (Doc. No. 15-5 at 173.) The motion to withdraw was ultimately denied, and the trial court sentenced Petitioner to the original terms of the plea agreement. (*Id.* at 225–27.)

On August 14, 2013, Petitioner appealed to the California Court of Appeal, contending the trial court erred in denying Petitioner's motion to withdraw his guilty plea based on the court's finding that the plea was entered into voluntarily. (Doc. No. 15-6 at 12–13.) On November 27, 2013, the appellate court affirmed the original judgment and order denying Petitioner's motion. (Doc. No. 15-8 at 13–14.) Petitioner did not file a petition for review in the California Supreme Court, nor did he seek a petition for writ of certiorari from the United States Supreme Court.

On November 6, 2014, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Doc. No. 15-9.) He claimed he was deprived of effective assistance of counsel during the plea negotiations in violation of his right to due process under the Sixth and Fourteenth Amendments. (*Id.* at 4.) Petitioner also alleged his appellate counsel was ineffective for failing to file a petition for review, also in violation of his Sixth

and Fourteenth Amendment rights. (*Id.* at 7.) On January 21, 2015, the California Supreme Court denied this petition. (Doc. No. 15-10 at 1.)

On February 18, 2015, Petitioner filed the instant Petition in which he alleges (1) ineffective assistance of counsel ("IAC"); (2) a due process violation for the denial of his motion to withdraw from the guilty plea; and (3) a due process violation for the appellate court's failure to hold an evidentiary hearing. (Doc. No. 1-1 at 4, 9–11.) On May 6, 2015, Respondent filed an answer to the Petition, arguing that Petitioner's first and second claims were previously exhausted, Petitioner's third claim is meritless, and he is not entitled to an evidentiary hearing. (Doc. No. 14 at 2.)

On December 10, 2015, Judge Crawford issued an R&R, which made the following findings: (1) Petitioner's claims are exhausted or otherwise plainly meritless; (2) the California Court of Appeal's determination that Petitioner's lawyer fully explained all materials related to the plea was reasonable; (3) Petitioner's trial attorney did not fall below the standard of reasonableness and was not ineffective for the purposes of the Sixth Amendment; (4) the trial court's refusal to allow Petitioner to withdraw his guilty plea was not a denial of his due process rights; and (5) denial of an evidentiary hearing was insufficient to raise a constitutional violation under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). (Doc. No. 18.)

On February 5, 2016, Petitioner filed two objections to the R&R: (1) his IAC claim did not fail to meet the requisite burden of proof; and (2) Judge Crawford improperly rejected his alleged due process violation in relation to the withdrawal of his plea. (Doc. No. 22.) Respondent replied to Petitioner's objections, (Doc No. 24), and Petitioner sur-replied, (Doc. No. 26).

## DISCUSSION

### I. Legal Standard

The Petition is governed by the AEDPA, applying a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting

*Lindh v. Murphy*, 521 U.S. 320, 333 & n.7 (1997)). Federal habeas relief may be granted if the state court (1) applied a rule different from the governing law provided by the United States Supreme Court; or (2) correctly identified the governing legal principle, but unreasonably applied it to the facts of the case. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The duties of the district court with respect to a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court must "make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980); *United States v. Remsing,* 874 F.2d 614, 617–18 (9th Cir. 1989).

As to portions of the report to which no objection is made, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court,* 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). Under such circumstances, the Ninth Circuit has held that a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo. See Robbins v. Carey*, 481 F.3d 1143, 1146–47 (9th Cir. 2007).

## II. Analysis

### A. Ineffective Assistance of Counsel Claim

In the Petition, Petitioner argued that Garcia provided ineffective assistance of counsel based on incorrectly advising Petitioner of the effect and consequences of his plea agreement, as well as Garcia's overall actions. (*See* Doc. No. 1-1 at 5.) Petitioner also asserted that Garcia generally acted below professional norms in advising him to accept the agreement. (*Id.* at 7–9). In the R&R, Judge Crawford found this claim had already been evaluated and rejected once by the state court. (Doc. No. 18 at 9.) Therefore, her only task was to determine whether the state court's denial of the claim was unreasonable. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011). Pursuant to 28 U.S.C. § 2254, federal

habeas courts are not required to address whether counsel's actions were reasonable, but rather whether there is any reasonable argument that counsel satisfied the IAC standard. *See Harrington*, 562 U.S. at 101–02.

In order to succeed on an IAC claim, a petitioner must establish two criteria: (1) counsel's performance was so deficient as to fall short of the guarantee of counsel under the Sixth Amendment, and (2) counsel's errors were so prejudicial that the petitioner was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This *Strickland* standard is highly deferential to trial counsel based upon the ease of second-guessing one's counsel after an adverse conviction or sentence is entered. *Id.* at 689. When analyzing an IAC claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance [.]" *Id.* This standard is heightened when raised in a federal habeas petition. *Harrington*, 562 U.S. 86 at 100–01.

In ground one, Petitioner alleged Garcia was ineffective because he incorrectly represented that Petitioner's sentence pursuant to the plea agreement was for a fixed term of 15 years and he would be out of prison by age 35. (Doc No. 1-1 at 5–6.) The California Court of Appeal found substantial evidence in the record existed to conclude that Garcia's performance was not deficient, including accurately advising Petitioner of all the terms, conditions, and effects of the plea agreement, including the sentence of an indeterminate term of 15 years to life plus an additional determinate term of 10 years. (Doc. No. 15-8 at 13.) Judge Crawford agreed, finding Petitioner's allegations against Garcia did not meet the high standard laid out in *Strickland*. (Doc. No. 18 at 15.)

In response to Judge Crawford's recommended denial of relief for ground 1, Petitioner emphasizes two points: (1) Garcia allowed Petitioner only enough time to make a decision regarding the plea agreement; and (2) Garcia allegedly told Petitioner his sentence would be for a determinate term of 15 years. (Doc. No. 22 at 5.)

### 1.    Time Allowed to Decide Whether to Accept the Offer

Petitioner argues he had an insufficient amount of time to decide whether to accept the proposed plea. (*Id.*) Whether a plea is valid turns on "whether the plea represents a

voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). When determining whether a plea was entered voluntarily and intelligently, the record must be reviewed to disclose whether the defendant understood the plea and its effects. *See Brady v. United States*, 397 U.S. 742, 747–49 & n.4 (1970). A plea is coerced when the defendant was induced by promises or threats that would render the plea inherently involuntary. *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). The amount of time a defendant is given to consider a plea deal is relevant to determining whether or not a plea was coerced. *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007).

Reviewing the record *de novo*, the Court finds the trial court's determination that Petitioner voluntarily and intelligently entered his guilty plea was not contrary to, or an objectively unreasonable application of, clearly established federal law. At the evidentiary hearing on Petitioner's motion to withdraw his guilty plea, Garcia testified that he went over the change of plea form with Petitioner "in detail," and Petitioner did not communicate any failure to understand or ask any questions that would lead Garcia to believe he was confused. (Doc. No. 15-5 at 208.) Additionally, Garcia testified that Petitioner was offered and rejected the same plea several months earlier. (*Id.* at 205–06.) According to Garcia, before accepting the plea agreement, Petitioner indicated "he didn't want to do certain things that were probably necessary to move forward at trial, and based on that he wanted to take the deal." (*Id.* at 216–17.) During his testimony at the evidentiary hearing, Petitioner further conceded that the trial seemed to be headed in his favor until an eyewitness identified him as the shooter and the government intercepted an incriminating jailhouse note. (*Id.* at 182–85, 220–21.)

As he testified at the evidentiary hearing, Garcia informed Petitioner of the plea deal before the lunch break. (*Id.* at 215–16.) Garcia and Petitioner then took their lunches separately and reunited to discuss the plea agreement and the consequences of alternatively going forward with the trial. (*Id.* at 216–17.) During this discussion, Petitioner initially stated he did not want to plead guilty. (*Id.* at 216.) However, after Garcia discussed the

possible outcome and his possible defense, Petitioner ultimately decided to accept the plea deal. (*Id.* at 216–17.) The trial court accepted Petitioner's plea and gun use admission. (*Id.* at 162.)

The trial judge also independently confirmed Petitioner understood that the "stipulated sentence" was "15 years to life plus ten years [.]" (*Id.* at 157.) Petitioner reiterated the voluntariness of his decision when the trial court asked him several questions about the nature of the plea, whether he understood the terms, explained the sentence, and even asked if Petitioner had sufficient time to discuss the case with Garcia. (*Id.* at 157–60.) The foregoing amply supports the trial court's conclusion that Petitioner's plea was entered voluntarily and intelligently. (*Id.* at 162.) *See Bonner v. Schneckloth*, 309 F. Supp. 442, 444 (C.D. Cal. 1970) (finding the accused was not entitled to relief for his guilty plea allegedly being coerced because of the plea colloquy performed in court and other statements showing he entered into the plea freely and voluntarily, even though he alleged his trial counsel threatened to withdraw on the eve of his trial if he did not plead guilty).

That Garcia spent an admittedly short amount of time discussing the plea offer does not change the Court's conclusion. It is true Garcia testified he told Petitioner the plea agreement needed to be done immediately, within the same day that the plea was offered. (Doc. No. 15-5 at 207–08.) Though Petitioner stated that the change of plea form was executed in a "matter of minutes," Garcia testified that he spent a total of 20 hours discussing the case with Petitioner, going over the positive and negative facts, and reviewing settlement options. (*Id.* at 177, 200–01). In *Woodford*, the Ninth Circuit found the state trial court was not contrary to or objectively unreasonable in its application of controlling federal law in determining the petitioner's plea to first-degree murder was voluntary, notwithstanding the petitioner having only two hours to consider whether to enter a plea. 508 F.3d at 570–72. The panel found compelling the fact that the petitioner responded affirmatively to the questions, "You've had enough time to talk with [your attorneys] about your case?" and "Are you pleading guilty freely and voluntarily?" *Id.* at 570–71.

As in *Woodford*, the trial court here asked Petitioner whether he "had sufficient time to discuss this case with [Garcia]," and whether anyone threatened him or promised him anything other than that included in the plea agreement to coerce him into pleading guilty. (Doc. No. 15-5 at 157, 160–61.) Like the petitioner in *Woodford*, Petitioner here responded in the affirmative to each of the trial court's questions. (*Id.*) Based in part on this exchange, the trial court determined the plea was "knowing, intelligent and voluntary." (*Id.* at 162.) As the Supreme Court has held, findings made by the judge accepting a guilty plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Court cannot now say that the trial court was objectively unreasonable in its application of controlling federal law. This conclusion is strengthened by the fact that Petitioner, also like the petitioner in *Woodford*, had received an identical plea agreement from the district attorney months before the trial began. (Doc. No. 15-5 at 205–06.) *See Woodford*, 508 F.3d at 572 ("Recall [] that Doe was offered identical terms shortly after he was arrested, more than a year before he pleaded guilty.").[1]

### 2. Petitioner's Confusion Regarding the Sentence

Petitioner next argues that Garcia incorrectly informed him his sentence would be for a determinate term of 15 years rather than an indeterminate term of 15 years to life plus ten years for the gun use enhancement. (Doc. No. 22 at 5.) This is the same argument Petitioner made before the trial court at the motion to withdraw hearing and the state

---

[1] Petitioner seemingly asks the Court to adopt a bright line rule, holding that fifteen minutes to one hour is insufficient, as a matter of law, for a defendant to enter a guilty plea freely and voluntarily. The Court cannot do so for two reasons. First, it is not the Court's task when considering habeas relief to enunciate new rules of law; rather, the Court is obligated to determine whether the state court's application of clearly established federal law as defined by the Supreme Court was objectively unreasonable. *See Bell*, 535 U.S. at 694. Second, a bright line rule would run afoul of such clearly established federal law, given that the Supreme Court has cautioned that this inquiry turns on the totality of *all* the circumstances surrounding a guilty plea. *Brady*, 397 U.S. at 749. The Court therefore cannot elevate time to consider a plea deal over other relevant circumstances.

appellate court. (Doc. No. 15-5 at 222–23; Doc. No. 15-6 at 12–13, 17.) Garcia testified contrarily, asserting he never told Petitioner that he would be out of prison by the time he was 35. (Doc. No. 15-5 at 207, 214.) Both state courts rejected Petitioner's version of events. (*Id.* at 224; Doc. No. 15-8 at 12–13.)

Because Petitioner's claim rests on a competing factual narrative, the Court will not overturn the state court's factual determination unless it was "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(d)(2)). A decision by the state court is based on an objective unreasonable determination of the facts, for example, when it fails to make a factual finding, makes a factual finding using an incorrect legal standard, or ignores or misstates evidence that supports the petitioner's claim. *Taylor v. Maddox*, 366 F.3d 992, 1000–01 (9th Cir. 2004).

After independently reviewing the record, the Court agrees with Judge Crawford's assessment that substantial evidence exists to support the state appellate court's decision to credit Garcia's testimony that he did not advise Petitioner that he would be out by the time he turned 35 years old. Of the facts relied upon in the R&R, (*see* Doc. No. 18 at 11–12), the Court finds particularly compelling the fact that, during the plea colloquy, Petitioner indicated he understood the sentence was an indeterminate term of 15 years to life plus ten years, (Doc. No. 15-5 at 157–60, 223–25). As stated previously, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74. Petitioner's self-serving assertions that Garcia advised him he would be out by the time he was 35, accusations he leveled at the evidentiary hearing on his motion to withdraw plea and on appeal and which those courts rejected, (Doc. No. 15-5 at 177–78, 180, 182, 191, 219–20, 224; Doc. No. 15-6 at 12–13, 17; Doc. No. 15-8 at 12–13), do not overcome the formidable barrier imposed by the trial court's findings at the plea colloquy and evidentiary hearing that Petitioner understood "it was a life term case," (Doc. No. 15-5 at 224).

Based upon the foregoing, the Court finds Petitioner has failed to demonstrate that the state courts were objectively unreasonable in rejecting his version of events, namely,

that Garcia incorrectly advised him of his plea's consequences. The Court accordingly **OVERRULES** Petitioner's objection, **ADOPTS** the R&R in relation to the IAC claim, and **DENIES** the Petition as to Petitioner's IAC claims.

### B. Denial of Due Process Rights

In his Petition, Petitioner asserted the trial court erred by not allowing him to withdraw his guilty plea. (Doc. No. 1-1 at 10.) Judge Crawford found the trial court afforded Petitioner due process protections. (Doc. No. 18 at 17.) Based upon the plea colloquy in the record, the California Court of Appeal's finding that Garcia went over the plea agreement with Petitioner in detail, and the fact that an identical offer was provided to him months earlier, Judge Crawford determined the state court's adjudication of this claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law. (*Id.* at 17–18.)

Petitioner objects, again arguing that his motion to withdraw his plea should have been granted based upon the limited time he had to make a decision, his confusion regarding the sentence, and Garcia's failure to clarify these issues. (Doc. No. 22 at 5–6.)

"Due process . . . require[s] that a defendant's guilty plea be voluntary and intelligent." *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (per curiam) (quoting *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988)). A defendant who pleads guilty based upon the advice of counsel does not justify setting aside an otherwise valid guilty plea. *United States v. Broce*, 488 U.S. 563, 571–72 (1989). When a defendant wishes to attack a guilty plea based upon his attorney's assistance, relief may be provided only if a court determines that the advice received was outside the scope of advice provided by competent attorneys handling criminal cases. *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

After reviewing the record *de novo*, the Court finds Petitioner's due process claims to be meritless. As discussed previously, substantial evidence exists in the record to support the trial court's determination that Petitioner entered into his guilty plea voluntarily and intelligently. Furthermore, substantial evidence exists to support the trial court's

determination that Garcia correctly advised Petitioner as to the plea's details. Garcia met with him on several occasions, explained the terms of the plea, and advised him of the consequences. The trial court reiterated the terms and consequences of the plea during the plea colloquy. Based on the foregoing, the Court agrees with Judge Crawford that Petitioner was afforded all the process he was due. The Court therefore **OVERRULES** Petitioner's objection, **ADOPTS** the R&R, and **DENIES** the Petition as to Petitioner's due process claims.

### III.  Certificate of Appealability

When a district court enters a final order adverse to the applicant in a habeas corpus proceeding, it must either issue or deny a certificate of appealability, which is required to appeal a final order in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller-El*, 537 U.S. at 327 (quoting 28 U.S.C. § 2253(c)(2)). Under this standard, the petitioner must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Here, the Court finds that reasonable jurists could not debate the Court's conclusion to dismiss with prejudice Petitioner's claims and therefore **DECLINES** to issue a certificate of appealability.

### CONCLUSION

Based on the foregoing, the Court **OVERRULES** Petitioner's objections, (Doc. No. 22), **ADOPTS** the R&R in its entirety, (Doc. No. 18), **DENIES** Petitioner's petition for writ of habeas corpus, (Doc. No. 1), and **DECLINES** to issue a certificate of appealability. **IT IS SO ORDERED.**

Dated:  December 30, 2016

Hon. Anthony J. Battaglia
United States District Judge